# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LESROY E. BROWNE, *on behalf of himself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST; and JOHN DOES 1 to 15,<br><br>Defendants. | Civil Action No. 2:21-cv-11871-KM-MF<br><br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
(201) 273-7117

Scott C. Borison (*pro hac vice* to be filed)
BORISON FIRM, LLC
1400 S. Charles Street
Baltimore, Maryland 21230
Tel. (301) 620-1016
Fax (301) 620-1018
scott@borisonfirm.com

Christina Henry (*pro hac vice* to be filed)
HENRY & DEGRAAFF, PS
787 Maynard Avenue S,
Seattle, Washington 98104
Tel. 206/330-0595
Fax 206-400-7609
chenry@HDM-legal.com

*Attorneys for Plaintiff*

TABLE OF CONTENTS

1.    PRELIMINARY STATEMENT ..................................................1

2.    STANDARD OF REVIEW.....................................................2

3.    ARGUMENT .............................................................4

      3.1.    Background...............................................4

      3.2.    Plaintiff May Pursue A Claim Under The Consumer Fraud
              Act For Unlicensed Actions And Deception............................5

      3.3.    The Consumer Fraud Act Applies To Acts "In Connection
              With The Sale . . . Or With The Subsequent Performance"
              And Includes Assignees Who Are Subject To The Same
              Limits Applicable To Its Assignor. .......................................13

      3.4.    The Defendants Are Engaged In The Consumer Loan
              Business.................................................16

      3.5.    Plaintiff Can Assert A Claim Based On The NJCFLA..........20

      3.6.    The Defendants Chose To Present Themselves As A Single
              Entity .................................................23

      3.7.    Plaintiff Has Stated A Claim For Unjust Enrichment............25

      3.8.    Defendants Do Not Challenge The Allegations That
              Defendants Cannot Show They Have Purchased Any
              Particular Account And Instead Use False Or Misleading
              Statements In The Course Of Their Collection Efforts..........26

4.    CONCLUSION ..........................................................27

i

# TABLE OF AUTHORITIES

## CASES

*Arroyo v. Stoneleigh Recovery Assocs., LLC*, No. 18-cv-12161-JMV, 2019 U.S. Dist. LEXIS 138287 (D.N.J. Aug. 14, 2019) .......................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................2

*Assocs. Home Equity Servs., Inc. v. Troup,* 343 N.J. Super. 254 (App. Div. 2001)..5

*Bandler v. Landry's Inc*., 235 A.3d 256, 464 N.J.Super. 311 (Super Ct. App. Div. 2020)........................................................................................................... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................2

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719 (D. Md. 2011) ...........11

*Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 U.S. Dist. LEXIS 32129, 2020 WL 888733 (D. Utah Feb. 24, 2020) ..............................................11

*Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438 (D.N.J. 2010) .............................3

*Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142 (3d Cir. 2013) ..2

*Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, No. 2:16-cv-1235-JLL-JAD, 2017 U.S. Dist. LEXIS 133286 (D.N.J. Aug. 18, 2017).......................................13

*Chulsky v. Hudson Law Offices, P.C.*, 777 F.Supp.2d 823 (D.N.J. 2011) ...............7

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454 (1994)................................8

*Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404 (D. Conn. 1990) ...........11

*Glassman v. Computervision Corp.,* 90 F.3d 617 (1st Cir. 1996) ............................3

*Gonzalez v. Wilshire Credit Corp*., 25 A.3d 1103, 207 N.J. 557 (2011)........ 1, 5, 15

*Goray v. Unifund CCR Partners*, No. 06-00214 HG-LEK, 2007 WL 4260017 (D. Haw. Dec. 4, 2007)...............................................................................................11

*Grant-Fletcher v. Brachfeld Law Grp., PC*, No. WMN-11-2072, 2012 WL
2523094 (D. Md. June 28, 2012) .......................................................................11

*Gray v. Suttell & Assocs., P.S.*, No. 2:09-cv-251-RMP, 2016 WL 409706 (E.D.
Wash. Feb. 2, 2016) ........................................................................................11

*Hoffman v. Encore Capital Group, Inc.*, No. A-3008-07T1, 2008 N.J. Super.
Unpub. LEXIS 1627, 2008 WL 5245306 (N.J. Super. Ct. App. Div. Dec. 18,
2008) ................................................................................................................15

*In re Burlington Coat Factory Litig.,* 114 F.3d 1410 (3d Cir. 1997) .......................3

*Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520, 938 A.2d 169 (Super. Ct.
App. Div. 2008) .............................................................................................5, 14

*Jubelt v. United N. Bankers, Ltd.,* No. 13–7150, 2015 WL 3970227 (D.N.J. June
30, 2015) ..........................................................................................................22

*Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443 (D. Nev. 1994) ...............11

*Latteri v. Mayer*, No. 17-13707-JLL, 2018 U.S. Dist. LEXIS 85926 (D.N.J. May
22, 2018) ..........................................................................................................12

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) .....................10

*Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010) ..............................................13

*Lemelledo v. Benefit Mgmt. Corp.,* 150 N.J. 255, 696 A.2d 546 (1997) ........ 5, 8, 14

*Lettenmaier v. Lube Connection, Inc*., 162 N.J. 134 (1999) ...................................13

*Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-cv-01117-SDW-SCM,
2016 U.S. Dist. LEXIS 124730 (D.N.J. Sept. 14, 2016) ......................................13

*MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018) ....................................22

*Macdonald v. CashCall, Inc.*, No. 16-2781, 2017 U.S. Dist. LEXIS 64761, 2017
WL 1536427 (N.J. Apr. 28, 2017) .....................................................................22

*N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297 (3d Cir. 2014) ................2

*Perez v. Rent A Center Inc*., 892 A.2d 1255, 186 N.J. 188 (2006 ..........................16

*Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-10025-BRM-DEA, 2018 U.S. Dist. LEXIS 119417 (D.N.J. July 16, 2018) ........................................................15

*Pollitt v. DRS Towing, LLC*, No. 10-1285-AET, 2011 WL 1466378 (D.N.J. April 18, 2011)................................................................................................................14

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 168 N.J. 255  (2001) ...20

*Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008)..........................................2

*Rosenzweig v. Transworld Sys., Inc.*, No. 16-227-JMV, 2016 U.S. Dist. LEXIS 127928 (D.N.J. Sept. 20, 2016) ............................................................................15

*Russey v. Rankin*, 911 F. Supp. 1449 (D.N.M. 1995)...............................................11

*Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469 (M.D. La. 1995) ...............................11

*Sun Chemical Corp. v. Fike Corp.*, 243 N.J. 319, 235 A.3d 145 (2020) .................7

*Tompkins v. Selip & Stylianou, LLP*, No. 18-12524-JLL, 2019 U.S. Dist. LEXIS 21937, 2019 WL 522143 (D.N.J. Feb. 11, 2019)................................... 12, 17, 20

*Veras v. LVNV Funding, LLC,* No. 13–1745, 2014 WL 1050512 (D.N.J. Mar. 17, 2014) ..................................................................................................... 13, 22

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) ............3

*Whittingham v. Mortg. Elec. Registration Servs.*, No. 06-3016-RBK, 2007 WL 1456196. 2007 U.S. Dist. LEXIS 33476 (D.N.J. May 15, 2007) .......................16

*Wyche v. Tsarouhis*, 385 F. Supp. 3d 392 (E.D. Pa. 2019) .....................................12

## STATUTES

N.J.S.A. 17:11C-18 ...............................................................................................9, 21

N.J.S.A. 17:11C-2 .............................................................................................. 17, 18

N.J.S.A. 17:11C-3 ...................................................................................................4

N.J.S.A. 5:12-133....................................................................................................9, 21

N.J.S.A. 56:1-2 .................................................................................................23

N.J.S.A. 56:8-2 ..............................................................................................1, 14

N.J.S.A. 56:8–2 .................................................................................................5

N.J.S.A. 56:8-2.13 .............................................................................................8

## 1.  PRELIMINARY STATEMENT

The Consumer Fraud Act defines unlawful practice as the "use or employment by *any person* of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection* with the sale or advertisement of any merchandise or real estate, *or with the subsequent performance* of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ."  The New Jersey Supreme Court in *Gonzalez v. Wilshire* applied the plain language of the CFA to cover post-transaction activity.

Here, Defendants collectively held themselves out as NCSLT and did business that way. Defendants attempted to take assignment of a note and misrepresented to Plaintiff that it was the legal assignee. This assignment was void *ab initio* since Defendants were not licensed as required by the New Jersey Consumer Finance Licensing Act. Moreover, Defendants did not have any sufficient legal proof of the alleged accounts. Defendants then took money from Plaintiff upon this deception, fraud, false pretense, misrepresentation, knowing concealment, and omission of this material fact. Plaintiff has valid claims.

## 2. STANDARD OF REVIEW

The standard provides "In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, which if accepted as true, states a facially plausible claim for relief." *Caprio v. Healthcare Revenue Recovery Grp., LLC,* 709 F.3d 142, 147 (3d Cir. 2013) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (to survive dismissal, complaint must state a "plausible claim for relief"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (need only to provide factual allegations that are sufficient "to raise a right to relief above the speculative level" (citations omitted)). And, "[a] complaint has facial plausibility when there is enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Iqbal*) (internal quotation marks omitted).

Also, "[a] Rule 12(b)(6) motion should not be used to address credibility or proof issues in a complaint. *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007); Jackson v. Birmingham Bd., 544 U.S. 167, 184 (2005); Morganroth & Morganroth v. Norris, McLaughlin, 331 F.3d 406, 416 (3d Cir. 2003) . The Court must view the facts presented and the inferences to be drawn therefrom in the light most  favorable to the non-moving party. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

The Court of Appeals has cautioned—as did *Iqbal*—that the standard "does not impose a probability requirement at the pleading stage, but **instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of** the necessary element." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (internal quotation marks omitted and emphasis added).

Applying that standard, the well-pleaded facts, together with the reasonable inferences favorable to Plaintiff drawn from those facts, establish the elements of the claims against the Defendants. Therefore, Defendants' Motion should be denied.

If, however, this Court were to conclude that some deficiency exists, Plaintiff should be permitted to amend. As has been explained:

> When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. *In re Burlington Coat Factory Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). A claim may be dismissed with prejudice, however, if amending the complaint would be futile. *Id.* "Futile," as used in this context, means that the complaint could not be amended to state a legally-cognizable claim. *Id.* (citing *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996)).

*Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 444 (D.N.J. 2010).

### 3. ARGUMENT

## 3.1.   Background

The New Jersey Consumer Finance Licensing Act prohibits engaging in the consumer lending business without a license. N.J.S.A. 17:11C-3 ("a. No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."). It also provides for criminal penalties and directs that any "contract of a loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, shall be void . . . ." N.J.S.A. 17:11C-33.

Defendants have allegedly purchased a pool of student loan accounts. Compl. ¶ 26. The Defendants dismiss this allegation as conclusory but then admits later in their brief that "The Trusts do not purchase student loans to profit off them." (Defs' Br. 15) "The Trusts are Delaware statutory trusts to hold student loans as part of securitization transactions. (citation omitted) They are passive entities and the monies received to repay the loans they hold pass through the Trusts . . . ." (Defs' Br. 15-16.) Putting aside the qualifying language and sophistry, there is no genuine dispute that the Trusts buy loans and collect on them. But it does so without complying with New Jersey law.

### 3.2.   Plaintiff May Pursue A Claim Under The Consumer Fraud Act For Unlicensed Actions And Deception

In *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115–16, 207 N.J. 557, 577–78 (2011), the New Jersey Supreme Court explained that the CFA applies to loan transactions as well as collections of loans by the original lender or an assignee:

> The CFA applies to such activities as "lending" and the sale of insurance related to the loan. *Lemelledo, supra*, 150 N.J. at 259–60, 265–66, 696 A.2d 546 (noting that CFA covers practice of loan packing, defined as "increasing the principal amount of a loan by combining the loan with loan-related services, such as credit insurance, that the borrower does not want"). More particularly, the CFA has been held to apply to the unconscionable terms of a home improvement loan secured by a mortgage on the borrower's home, *Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J.Super. 254, 264–65, 278–80, 778 A.2d 529 (App.Div.2001), and to the unconscionable loan-collection activities of an assignee of a retail installment sales contract, *Jefferson Loan Co. v. Session*, 397 N.J.Super. 520, 538, 938 A.2d 169 (App.Div.2008). Accordingly, collecting or enforcing a loan, whether by the lender or its assignee, constitutes the "subsequent performance" of a loan, an activity falling within the coverage of the CFA. *Ibid.*; accord N.J.S.A. 56:8–2.

The Plaintiff's allegations include the following facts in support of his claims against the Defendants:

> 19.   While the Defendants claim they have purchased the student loan credit accounts, they cannot show that they have purchased any particular account and instead use false or misleading statements in the course of their collection efforts consisting of demands, invoices,

statement, dunning letter or lawsuits.

20.     By allegedly purchasing and taking assignment of the accounts, Defendants acted as a "sales finance company" as defined at N.J.S.A. 17:16C-1(f).

21.     By allegedly purchasing, taking assignment of, and/or enforcing the accounts, Defendants engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2.

22.     During all times relevant to this action, Defendants were not licensed as a "sales finance company" or a "consumer lender" pursuant to the CFLA, at N.J.S.A. 17:11C-3.

23.     In 2007, Browne entered into a student loan agreement with JP Morgan Chase Bank ("Chase Loan").

24.     The Chase Loan was for personal, family, or household purposes.

25.     Between June 2017 and June 2020 Browne made payments to the Defendants pursuant to the Defendants' communications that represented they were entitled to collect the amounts allegedly due under the Chase Loan.

26.     Defendants allegedly purchased a pool of student loan accounts including loan accounts of the Plaintiff and the class members.

27.     In an attempt to collect the Chase Loan, Defendants reported the account to a major credit reporting agency, TransUnion, and may have reported it to others. The Defendants claimed they were the owners of the accounts they reported.

28.     Defendants commenced collection activities against Plaintiff when it was not properly licensed to do so under the New Jersey Consumer Finance Licensing Act or any other New Jersey consumer lending statute.

(Compl., ECF No. 1-1)

Despite these allegations and *Gonzalez*, the Defendants contend that there is no basis for a claim under the CFA based on the facts alleged in the Plaintiff's Complaint. The Plaintiff's CFA claim is about Defendants' false or misleading statements in the subsequent performance of the loans as well as Defendants' unlicensed status. Defendants cite to *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823 (D.N.J. 2011) which decision was rendered on March 22, 2011, without the benefit of the New Jersey Supreme Court's *Gonzales* decision that was not issued until August 29, 2011. *Chulsky* discounted the decision in *Jefferson Loan Co., Inc. v. Session*, 938 A.2d 169, 180, 397 N.J. Super. 520, 537 (App. Div. 2008), but *Gonzalez* cited *Jefferson Loan* approvingly. Given that the CFA is state law, the decision by the Supreme Court in *Gonzalez*, that came to a different conclusion than *Chulsky*, should control.

The New Jersey Supreme Court also reiterated the broad scope of the CFA in a recent decision in response to a question certified to it by the Third Circuit in *Sun Chemical Corp. v. Fike Corp.*, 243 N.J. 319, 330, 235 A.3d 145, 151 (2020). In *Sun Chemical* the District Court had ruled that the plaintiff could not assert a CFA claim because another law also regulated the claims. The Supreme Court rejected that ruling and held:

> In addition to its ever-growing scope, "[t]he language of the CFA evinces a clear legislative intent that its

> provisions be applied broadly." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 264, 696 A.2d 546 (1997). "[L]ike most remedial legislation, the [CFA] should be construed liberally in favor of consumers." *Cox*, 138 N.J. at 15, 647 A.2d 454.

> And, by the plain terms of the statute, "[t]he rights, remedies and prohibitions" created by the CFA are "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State." N.J.S.A. 56:8-2.13. Courts are therefore reluctant "to undermine the CFA's enforcement structure . . . by carving out exemptions for each allegedly fraudulent practice that may concomitantly be regulated by another source of law." *Lemelledo*, 150 N.J. at 270, 696 A.2d 546.

*Sun Chem Corp.*, 243 N.J. at 330, 235 A.3d at 151.

The Court confirmed that there is "'presumption that the CFA applies to a covered activity,' a presumption that can be overcome only when a court is satisfied 'that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes.'" *Sun Chem Corp.,* 243 N.J. at 331, 235 A.3d at 151. Defendants have not offered any conflict between the licensing law and the CFA. They cannot since there is none. Both seek to protect consumers and impose minimum standards for any person who engages with consumers.

*Bandler v. Landry's Inc.*, 235 A.3d 256, 261–62, 464 N.J. Super. 311, 319–20 (App. Div. 2020), held that a CFA claim may be based on violation of the provisions of Casino Control Act (CCA) notwithstanding that the CCA specifically

stated the CCA was to control over other provisions of law and the enforcement of the law was within the exclusive jurisdiction of the state agency. The Appellate Division saw no conflict between the laws since both addressed deceptive activities and because while "[t]he CCA delegates to the Division the authority to issue and enforce regulations governing "gaming-related advertising," but it does not delegate to it the power to adjudicate common law or non-CCA statutory claims, or to award damages." *Bandler*, 235 A.3d at 262, 464 N.J. Super. at 320.

In contrast to the affirmative statement by the legislature in the CCA that the State agency had exclusive jurisdiction over enforcement of the CCA, the New Jersey Consumer Finance Licensing Act does not contain a comparable statement or limitation. The CCA provision, first enacted in 1977, states:

> The commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act, and the division shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act.

N.J.S.A. 5:12-133.

There is no comparable direction by the legislature under the NJCFLA, enacted in 1996, that bestows exclusive jurisdiction on any agency. The provisions of N.J.S.A. 17:11C-18 grants certain authority to the Commissioner; but nowhere does it provide the Commissioner any exclusive authority as in the CCA. And, the NJCFLA like the CCA "does not delegate to [the Commissioner] the power to

adjudicate common law or non-CCA statutory claims, or to award damages."
*Bandler*, 235 A.3d at 262, 464 N.J. Super. at 320. Plaintiff is entitled to pursue the
protections afforded by the NJCFLA since the Commission has not been delegated
any power to fully enforce the provisions.

Moreover, courts that have reviewed this issue in the context of other
consumer protection statutes have held it is permissible to assert a claim based on
violation of a licensing statute even if the licensing statute does not provide a
private cause of action. In the same way that a violation of a traffic law (which
does not provide a private cause of action) can provide the foundation for a
negligence claim, a violation of a statute provides a foundation for a consumer
protection claim.

In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010),
plaintiff alleged a violation of the FDCPA against debt collector Unifund for
sending letters threatening litigation while operating unlicensed in the State of
Florida. *Id.* at 1188-1189. Florida's licensure statute, the FCCPA, prohibiting
collection agencies from operating without a license did not provide a private
cause of action for non-registration. The defendant "Unifund contends that because
an analogous provision of the FCCPA does not itself support a private right of
action for failure to register, then to premise a federal cause of action upon the
same conduct and legal theory would undermine or circumvent the state's

consumer protection scheme. We disagree."

Numerous other courts reached the same conclusion. In *Buhler v. BCG Equities, LLC*, No. 2:19-cv-00814-DAK, 2020 U.S. Dist. LEXIS 32129, 2020 WL 888733, at *2 (D. Utah Feb. 24, 2020) the Court held that violation of a licensing statute supported a claim for violation of the Fair Debt Collection Practices Act holding that "[R]ather the alleged UCAA violations form the essential elements to make out [the deceptive act]." *Buhler*, 2020 WL 888733, at *4. This position "does not transform a UCAA violation into a private right of action under the FDCPA . . . ." *Id*. So do other federal courts in Maryland,[1] Hawaii,[2] and Washington,[3] New Mexico,[4] Louisiana,[5] Connecticut,[6] and Nevada.[7]

New Jersey is no different when holding the violation of the NJCFLA form

---

[1] *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 727 (D. Md. 2011); *Grant-Fletcher v. Brachfeld Law Grp., PC*, No. WMN-11-2072, 2012 WL 2523094, at *6 (D. Md. June 28, 2012)

[2] *Goray v. Unifund CCR Partners*, No. 06-00214 HG-LEK, 2007 WL 4260017, at *9 (D. Haw. Dec. 4, 2007)

[3] *Gray v. Suttell & Assocs., P.S.*, No. 2:09-cv-251-RMP, 2016 WL 409706, at *4 (E.D. Wash. Feb. 2, 2016)

[4] *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995)

[5] *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 473 (M.D. La. 1995);

[6] *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1416 (D. Conn. 1990)

[7] *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1452 (D. Nev. 1994)

the basis of a FDCPA claim. In *Tompkins v. Selip & Stylianou, LLP, No*. 18-12524-JLL, 2019 WL 522143, at *2 (D.N.J. Feb. 11, 2019), there was no dispute that a violation of the NJCFLA supported an FDCPA claim. See also, *Valentine v. Unifund CCR, Inc.*, No. 20-cv-5024-JMV, 2021 U.S. Dist. LEXIS 44747, at *12 (D.N.J. Mar. 10, 2021) ("as a purchaser of [a Capital One] debt, [the debt buyer] meets the definition of consumer lender."); *Arroyo v. Stoneleigh Recovery Assocs., LLC*, No. 18-cv-12161-JMV, 2019 U.S. Dist. LEXIS 138287, at *13 (D.N.J. Aug. 14, 2019) (assignee of Capital One loan had to be licensed); *Wyche v. Tsarouhis*, 385 F. Supp. 3d 392, 393-94 (E.D. Pa. 2019) ("After careful parsing of the Pennsylvania Consumer Credit Code and persuaded by the remedial purposes of the Fair Debt Collection Practices Act and the reasoning of several courts in other Districts facing the same issue under their state licensing laws, we agree with the defaulted borrower as to the company's inability to file a lawsuit to collect this deficiency judgment. As it lacked a license, the company could not sue on the deficiency judgment in its own name and its state court lawsuit misrepresents this fact in collecting the debt."); *Latteri v. Mayer*, No. 17-13707-JLL, 2018 U.S. Dist. LEXIS 85926, at *6 (D.N.J. May 22, 2018) (motion to dismiss denied where plaintiff alleged defendant violated the FDCPA when it attempted to collect a debt on behalf of an unlicensed consumer lender); *Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, No. 2:16-cv-1235-JLL-JAD, 2017 U.S. Dist. LEXIS 133286,

at *15-16 (D.N.J. Aug. 18, 2017) (finding Article III standing); *Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-cv-01117-SDW-SCM, 2016 U.S. Dist. LEXIS 124730 (D.N.J. Sept. 14, 2016) ("a debt collector's representation in a collection complaint that it had the right to collect a debt when, in fact, it lacked the license required to initially purchase the debt, would violate, at minimum, FDCPA section e(10)."); *Veras v. LVNV Funding, LLC*, No. 13-1745 (RBK/JS), 2014 U.S. Dist. LEXIS 34176, at *19 (D.N.J. Mar. 17, 2014) ("Plaintiff's allegation that Defendants attempted to collect Plaintiff's debt in contravention of the NJCFLA is sufficient to at least support his claim under section 1692e(10), that Defendants used a false representation or deceptive means to collect or attempt to collect Plaintiff's debt.").

The broadness of the CFA meets or exceeds the scope of the FDCPA. Thus, Defendants' violation of the NJCFLA can be the foundation for a CFA claim.

### 3.3. The Consumer Fraud Act Applies To Acts "In Connection With The Sale . . . Or With The Subsequent Performance" And Includes Assignees Who Are Subject To The Same Limits Applicable To Its Assignor.

The Courts have consistently held the CFA is remedial and should be broadly construed to effect its purposes. *Lee v. Carter-Reed Co., L.L.C.,* 203 N.J. 496, 522 (2010) ("Because it is 'remedial legislation,' the CFA is 'construe[d] liberally to accomplish its broad purpose of safeguarding the public.' (citation omitted); *Lettenmaier v. Lube Connection, Inc*., 162 N.J. 134, 139 (1999)

("Because it is a remedial statute, its provisions are construed liberally in favor of the consumer to accomplish its deterrent and protective purposes."). The CFA applies to:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent   that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. 56:8-2.

The CFA applies to the sale of credit. *Lemelledo v. Benefit Mgmt. Corp.,* 150 N.J. 255, 696 A.2d 546 (1997) ("By its terms, the CFA is applicable to the provision of credit."). In *Jefferson Loan Co., Inc. v. Session*, 938 A.2d 169, 180, 397 N.J. Super. 520, 537 (App. Div. 2008) the Appellate Division held that the act applied to an assignee of a credit contract and the assignee acts in connection with "the subsequent performance of the contract"—collection of the debt. *See also Pollitt v. DRS Towing, LLC*, No. 10-1285-AET, 2011 WL 1466378, at *6 (D.N.J. April 18, 2011) ("as an assignee, Wachovia would be subject to the CFA to the extent that any of its practices constituted an unlawful act under the CFA."). *Pollitt* also criticized *Hoffman v. Encore Capital Group, Inc.*, No. A-3008-07T1, 2008 N.J. Super. Unpub. LEXIS 1627, 2008 WL 5245306, at *3 (N.J. Super. Ct. App.

Div. Dec. 18, 2008), as "not particularly helpful, given its failure to address Jefferson Loan, or otherwise to explain why purchasers of defaulted debt should be treated differently from purchasers of pre-default debt such as the assignee in Jefferson Loan. *Pollitt*, 2011 WL 1466378, at n.5. Logically, since the CFA applies to a sale of credit, an assignee of the credit contract is also subject to the CFA.

As discussed above, the New Jersey Supreme Court held that "[w]e roundly reject defendants' argument that the collection activities of a servicing agent, such as Wilshire, do not amount to the 'subsequent performance' of a loan, a covered activity under the CFA." *Gonzalez v. Wilshire Credit Corp*., 25 A.3d 1103, 1118, 207 N.J. 557, 582 (2011). *Gonzalez* did not involve any participation in the underlying extension of consumer credit either but only to subsequent performance (post-transaction activity).

Even decisions from this District support the Plaintiff's position here. *See Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-10025-BRM-DEA, 2018 U.S. Dist. LEXIS 119417, at *14 (D.N.J. July 16, 2018) (attempt to collect storage costs after repossession of the vehicle covered by the CFA "even if that party is not the assignee of the loan") (quoting *Pollitt*); *Rosenzweig v. Transworld Sys., Inc.*, No. 16-227-JMV, 2016 U.S. Dist. LEXIS 127928, at *8 (D.N.J. Sept. 20, 2016) (allowing leave to amend to add, *inter alia*, CFA claim against a debt collector); *Whittingham v. Mortg. Elec. Registration Servs.*, No. 06-3016-RBK, 2007 WL

1456196. 2007 U.S. Dist. LEXIS 33476 at *23-24 (D.N.J. May 15, 2007) (CFA applied to mortgage servicer's (HSBC Mortgage Services) debt collection activities). The conclusion in *Gonzalez* is consistent with the language of the CFA that it applies to any deception "in connection with the sale [including] with the subsequent performance . . . ."

Moreover, the underlying illegal behavior involving credit here is consistent with the decision in *Perez v. Rent A Center Inc.*, 892 A.2d 1255, 1275, 186 N.J. 188, 220 (2006), where the Supreme Court held that a violation of the retail installment sales act provided a predicate act for a CFA claim. The court reiterated its earlier rulings that said the focus for determining whether a violation of another law could be the basis for a claim under the CFA is whether or not there was "a direct and unavoidable nature" of a conflict between the regulation of the law and the CFA. Like *Rent A Center*, there is no conflict between the NJCFLA and the CFA.

Thus, CFA claims may be based on the collection of services sold since the collection of the debt is in connection with the sale.

### 3.4.   The Defendants Are Engaged In The Consumer Loan Business

Under the NJCFLA, a person is engaged in the consumer loan business if:

> Any person directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes . . . shall be deemed to be engaging in the consumer loan business.

N.J.S.A. 17:11C-2. There is no question Defendants bought or attempted to buy the note and attempted to enforce the note by collecting on it.

If a defendant meets this definition, it is required to be licensed under the NJCFLA. *Tompkins v. Selip & Stylianou, LLP*, 2019 WL 522143, at *3 (D.N.J., 2019) ("Courts in this District have invoked this second part of the definition when classifying debt collection practices as falling within the consumer loan business. (citations omitted)"). The Defendants claim that they are not covered by this provision of the NJCFLA because Plaintiff alleges that they allegedly acquired accounts, not "notes" which is set forth in the definition of consumer loan business at N.J.S.A. 17:11C-2. Defendants' analysis is wrong.

The Plaintiff has alleged:

> 15.    Defendants are in the business of allegedly purchasing and taking assignment of student loan credit accounts originally extended by other creditors, which they then enforce against the borrowers through collection letters, lawsuits, and post-judgment collection efforts. This is their principal business.

> 16.    In the course of their business, Defendants have allegedly purchased and taken assignment of numerous student loan credits accounts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

> 17.    All or substantially all of the accounts of which Defendants allegedly took assignment extended credit of less than $50,000 and provided for rates of interest and/or other charges beyond those authorized by the New Jersey

Consumer Finance Licensing Act, at N.J.S.A. 17:11C-1 to -49 for licensed consumer lenders.

18.    In the course of their business, Defendants have enforced their allegedly assigned accounts against New Jersey consumers through collection letters, lawsuits, and post-judgment collection efforts.

(Complaint, ECF No. 1-1).

Defendants say since the Plaintiffs only allege "accounts" were assigned that the allegations do not meet the "note" requirement to be considered engaged in consumer lending. The documents upon which the Defendants rely for their collections against the Plaintiff and others include a document entitled "Note Disclosure Statement." (See Also Exhibit B to Browne Decl.)[8] That document states "[t]his disclosure statement relates to your Loan Note . . . ." There is no doubt that the debt alleged acquired by the Defendant falls within the "notes" covered by N.J.S.A. 17:11C-2.

The Defendants presentation of this argument, when they know that the documents reference the loan as being a note, cannot be explained. But if the Court deems it necessary then Plaintiff should be granted leave to amend the complaint to substitute or add "note" along with the reference to accounts in the complaint.

Similarly, the Defendants claims that there are no allegations that they are

---

[8] Plaintiff is only submitting the document that reference a note as an exhibit since the Defendants have submitted and rely on materials outside the pleadings on a motion to dismiss.

engaged in "business" falls flat and is refuted by the allegations in ¶¶ 15 and 16 of the Complaint.[9] (ECF No. 1-1). The argument that they are not in business because they pass along their receipts to others does not change that they engage in business to collect amounts in their own name before distributing any amounts. Defendants cannot avoid the licensing requirements of the NJCFLA by claiming, since they take the money they collect and pay it to others, they are not assignees of consumer transactions. What they do with the money after it is collected do not change that the collector is obtaining the money from the consumer. The Trusts' relationship with the consumer as a collector is what is determinative of the relationship. If Defendants' argument is accepted, no assignee of any consumer debt could ever be covered by the NJCFLA since the assignee merely need to show that it then paid out the money collected for any purpose. Under the Defendants' theory, no corporation is in business because they ultimately provide their revenue to the shareholders.

Defendants also contend that they do not have to be licensed as sales finance companies but given that the Defendants were required to be licensed since they are engaged in consumer lending, "the Court need not wade into superfluous interpretation of state law to determine whether [Defendants were] further subject

---

[9] Defendants' own privacy notice says they share borrower's personal information "[f]or our everyday business purposes" including "[f]or nonaffiliates to market to you[.]" (Ex. A, Browne Decl.)

to the NJCFLA as a sales finance company." *Tompkins v. Selip & Stylianou, LLP*, No. 18-12524-JLL, 2019 U.S. Dist. LEXIS 21937, 2019 WL 522143, at *4 (D.N.J. Feb. 11, 2019).

### 3.5.   Plaintiff Can Assert A Claim Based On The NJCFLA

To determine if a statute confers an implied private right of action, courts consider whether: (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.  *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 168 N.J. 255, 272 (2001).

Plaintiff is clearly a member of the class for whose benefit the statute was enacted—a consumer.  While the NJCFLA permits the Commission to take action, nothing in the Act indicates that this is the <u>sole</u> method of enforcement. Nor is there any language granting exclusivity to the Commissioner. The decision in *Bandler v. Landry's Inc*., 235 A.3d 256, 261–62, 464 N.J. Super. 311, 319–20 (Super. Ct. App. Div. 2020), examined a law that provided for exclusive jurisdiction over the law. There the court reviewed the Casino Control Act that specifically stated the CCA was within the exclusive jurisdiction of the state agency. In contrast to the affirmative statement by the legislature in the CCA that

granted a state agency exclusive jurisdiction over enforcement of the CCA, the

NJCFLA does not contain a comparable statement or limitation.

The CCA provision, first enacted in 1977, states:

> The commission shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act, and the division shall have exclusive jurisdiction over all matters delegated to it or within the scope of its powers under the provisions of this act.

N.J.S.A. 5:12-133.

There is no comparable direction by the legislature under the NJCFLA,

enacted in 1996, that bestows exclusive jurisdiction on any agency. The provisions

of N.J.S.A. 17:11C-18 grants certain authority to the Commissioner, but nowhere

does it provide the Commissioner any exclusive authority as in the CCA. And, the

NJCFLA like the CCA "does not delegate to [the Commissioner] the power to

adjudicate common law or non-CCA statutory claims, or to award damages."

Nowhere in the Act is any prohibition on a private cause of action. A statute

without a meaningful remedy is a toothless tiger, not worth the paper it was written

upon.

Defendants' motion cites three unpublished district court cases as to a

private right of action under the NJCFLA.[10]  None are binding and the latter two offer no independent analysis but simply follow the first case. In light of the more recent precedent from a New Jersey appellate court in *Bandler v. Landry's Inc.* and its conclusion that a private right may be asserted even when the statute provides for exclusive enforcement by an agency, the *Veras* decision on the NJCFLA-private right of action should be reexamined. (*Jubelt* adds nothing since it merely repeated *Veras* as did *MacDonald*). *Macdonald v. CashCall, Inc.*, No. 16-2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, at *11 (D.N.J. Apr. 28, 2017) (there were no reasons offered to depart from the *Veras* decision.) [11]

The District Court in *Veras* found that the NJCFLA did not provide for a private right of action, while finding a violation of the NJCFLA to be a basis to be a FDCPA claim, but there is no language in the statute that supports exclusive jurisdiction. Instead, as noted above, the statute merely provides specific authority to the Commissioner to take specific actions but none of these specified actions

---

[10] *Veras v. LVNV Funding, LLC,* No. 13–1745, 2014 WL 1050512, at *7–9 (D.N.J. Mar. 17, 2014); *Jubelt v. United N. Bankers, Ltd.,* No. 13–7150, 2015 WL 3970227, at *14 (D.N.J. June 30, 2015); *Macdonald v. CashCall, Inc.*, No. 16-2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, at *11 (D.N.J. Apr. 28, 2017).

[11] The appeal referenced by the Defendants for this case, *MacDonald v. CashCall, Inc*, 883 F.3d 220 (3d Cir. 2018), was limited to an arbitration issue in the case and did not address the NJCLFA.

foreclose a private right of action. At a minimum, the request for a declaration and related relief can be sought by a person who is to be protected by the law.

### 3.6.    The Defendants Chose To Present Themselves As A Single Entity

The only persons to blame for the Plaintiff suing all of the various Trusts are the Trusts themselves. Plaintiff named the National Collegiate Student Loan Trust along with various other Trusts as defendants in this case. Why? Because the Defendants collectively use an unregistered trade name to refer to themselves in correspondence and communications to third party consumer reporting agencies. See Declaration of Plaintiff, Exhibit A. The use of an unregistered trade name is illegal in New Jersey. N.J.S.A. 56:1-2 ("No person shall conduct or transact business under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person shall file a certificate . . . .").

Having illegally used trade names, Defendants now complains that Plaintiff has not named the right entity as a defendant in this action. If Defendants had complied with the law requiring registration of trade names, Plaintiff would not be in the dark as to which entity claims to own his loan. It appears that the Defendants have now identified the Trust that claims to have been assigned Plaintiff's student loan in its motion on Page 8 at n.4—"[t]o the best of the Trusts' knowledge, only

National Collegiate Student Loan Trust 2007-1 has ever held an interest in the JP Morgan loan." This would mean the Plaintiff's claims may proceed against that entity. But this assertion is unsupported and not appropriate at the motion to dismiss stage.

Moreover, Defendants through their agent represented "[e]nclosed is your lender's privacy policy for the education loans we service on their behalf." (Ex. A Browne Decl.) Defendants' privacy notice says, "we list the reasons financial companies can share their customers' personal information; the reasons NCSLT chooses to share; and whether you can limit this sharing." Defendants share consumer's personal information for their "everyday business purposes" including for "nonaffiliates to market to [the consumer]." On page 2 of Defendants' privacy notice, it says:

| Page 2 | |
|---|---|
| **Who we are** | |
| **Who is providing this notice?** | The National Collegiate Student Loan Trusts and its affiliate NC Residuals Owners Trust (collectively referred to herein as "NCSLT"). |

Defendants cannot collectively use consumer's information for business purposes, including to sell information to nonaffiliates to market to consumers, and continuously represent to Plaintiff collectively as NCSLT, but now claim that they are separate. To put it colloquially, Defendants cannot have their cake and eat it too.

### 3.7.    Plaintiff Has Stated A Claim For Unjust Enrichment

The Defendants contend that the unjust enrichment claim should be dismissed based on its arguments concerning the licensing issue and the claim under the CFA. These arguments are addressed above.

The Defendants also says that the unjust enrichment claim should be dismissed because the Plaintiff does not allege that any of the Defendants received any benefit from Plaintiff. Plaintiff alleged "Plaintiff and the Subclass members suffered ascertainable loss from Defendants' CFA violations in the amount monies collected, and/or paid on the void accounts, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19." (Compl. ¶ 73, ECF No. No. 1-1) The Defendants' contention ignores this allegation, which is taken as true.

Defendants collected money from Plaintiff when no money was owed to them because Defendants' alleged purchase of the debt while unlicensed under the NJCFLA was void *ab initio*. A claim for unjust enrichment in this situation is well recognized. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ("A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.").

### 3.8.   Defendants Do Not Challenge The Allegations That Defendants Cannot Show They Have Purchased Any Particular Account And Instead Use False Or Misleading Statements In The Course Of Their Collection Efforts

Plaintiff alleged in paragraph 19 of the Complaint, Defendants "cannot show that they have purchased any particular account and instead use false or misleading statements in the course of their collection efforts . . . ." Thus, "Defendants committed unconscionable commercial practices, deceptive, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by . . . [m]aking false or misleading communications that it had acquired the loans of Plaintiff and the Class when Defendants knew they could not show they had acquired any particular loans" and "lacked the ability to show it had [the] legal right to enforce the accounts[.]" (Compl. ¶ 72(a), (e)) Defendants do not deny these allegations in this motion to dismiss.

A Consent Order entered by the Consumer Financial Protection Bureau relating to the NCSLT Trusts found as follows:

> To collect on defaulted private student loans, Law Firms engaged by Respondent's Attorney Network business unit filed debt Collections Lawsuits in state courts across the country on behalf of the Trusts. In support of many of these lawsuits, Respondent executed affidavits that falsely claimed personal knowledge of the account records and the consumer's debt, and in many cases, personal knowledge of the chain of assignments establishing ownership of the loans. In addition, since November 1, 2014, Law Firms hired by Respondent filed hundreds of debt Collections Lawsuits without the

documentation necessary to prove Trust ownership of the
loans.

See the CFPB-Transworld Systems, Inc., Consent Order attached as Exhibit 1 to
the Declaration of Yongmoon Kim. These are the findings of a governmental
agency, the Consumer Financial Protection Bureau.

The CFPB investigated the practices of the collector Transworld Systems,
Inc., hired to act on behalf of the Defendants here. In any event, these
misrepresentations (Compl. ¶¶ 19, 72(a), (e)) are not challenged by Defendants in
their motion. Thus, Defendants' motion should be denied.

### 4.   CONCLUSION

Defendants misrepresented to Plaintiff that it lawfully took assignment of a
loan note when it was not licensed under New Jersey law. Defendants then
proceeded to take money from Plaintiff which is prohibited by New Jersey law.
Plaintiff seeks redress on behalf of himself and other New Jersey consumers.
Therefore, Defendants' motion to dismiss should be denied for the foregoing
reasons.

Respectfully submitted,

KIM LAW FIRM LLC

*s/Yongmoon Kim*
Yongmoon Kim

DATED: September 7, 2021